IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAWN THOMAS BENNETT,

Petitioner,

No. 2:12-cv-1099 TLN EFB P

vs.

G. D. LEWIS,

Respondent.

FINDINGS AND RECOMMENDATIONS

_____________________________/

Petitioner is a state prisoner proceeding without counsel on an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2009 judgment of conviction entered against him in the Sacramento County Superior Court on charges of first degree burglary, attempted murder, and assault with a deadly weapon, with enhancements for personal use of a deadly weapon. He seeks relief on the grounds that the trial court violated his right to due process in admitting unduly prejudicial evidence, the cumulative effect of errors at his trial violated his right to due process, and his trial counsel rendered ineffective assistance. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

/////

/////

## I. Background[1]

> A jury convicted defendant of first degree burglary (Pen.Code, § 459; unspecified statutory references that follow are to this code), attempted murder (§ 664/187, subd. (a)) with personal use of a knife (§ 12022, subd, (b)(1)), and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)). Defendant admitted a prior prison term (§ 667.5, subd. (b)) and two prior serious felonies (§§ 667, subds.(a) & (b)-(I); 1170.12).
>
> We note that, although defendant admitted his 1998 juvenile adjudication as both a five-year enhancement and a strike, because it was a juvenile adjudication and not a conviction, it does not qualify as an enhancement under section 667, subdivision (a). (*People v. West* (1984) 154 Cal.App.3d 100, 110.) The trial court did not impose an enhancement based on this prior conviction; instead, it imposed a five-year enhancement for the 2005 prior on both counts 2 and 4. (*People v. Williams* (2004) 34 Cal.4th 397, 405.)
>
> Sentenced to 13 years plus 52 years to life in prison, defendant appeals. He contends it was an abuse of discretion and a violation of due process to admit evidence he had ties to the Aryan Brotherhood and that his mother had pleaded no contest to burglary based on the events we will set forth momentarily. He further contends the cumulative effect of these errors requires reversal and, to the extent any claim was forfeited, he received ineffective assistance of counsel. Defendant contends, and the People concede, that the case must be remanded for resentencing on the attempted murder count. We remand for resentencing and with directions to strike the prison term enhancements, and otherwise affirm, finding no prejudicial error in the admission of the challenged evidence due to the overwhelming, uncontroverted evidence of defendant's guilt.
>
> **Facts and Proceedings**
>
> Jennifer M. and Starla S. shared an apartment in Sacramento. Defendant's mother, Angela Bennett, was a neighbor. (To avoid confusion, Angela Bennett is hereafter referred to as Angela or defendant's mother.) Jennifer M. knew defendant and they had been intimate in the past. Everyone, including his mother, called defendant "Hate."
>
> On April 1, 2008, Kenny M., a homeless youth, was at the apartment staying with Jennifer M. and Starla S.; Jennifer M.'s

---

[1] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

boyfriend Tommy D. was also there. Defendant walked by the window and exchanged heated words with those in the apartment. Later that night, defendant's mother knocked on the door. When Starla S. opened it, defendant pushed his way into the apartment. He fought with Kenny M. and during the fist fight a pocket knife fell to the ground. The fight moved to the kitchen where defendant cut both Kenny M. and Tommy D. with a knife. Defendant fled with his mother and her boyfriend.

These facts are undisputed, but Jennifer M., Starla S., Kenny M. and Tommy D. gave differing versions of exactly what happened. Because resolution of this case turns on whether the erroneous admission of evidence was prejudicial because it adversely affected defendant's claim of self-defense, we describe the varying versions of events in some detail.

The witnesses disagreed about whom defendant argued with initially. Both Starla S. and Jennifer M. claimed defendant argued with Tommy D. Starla S. testified the argument began when defendant yelled at Tommy D. because he thought Tommy D. gave him a dirty look. Starla S. and Jennifer M. tried to break up the argument. Starla S. went outside and talked to defendant; Starla S. walked with him to his mother's and returned 10 minutes later. Jennifer M. claimed Tommy D. yelled racial slurs such as “skinhead” and “white power” at defendant. Defendant at first walked away, but he came back and asked who said that. After Jennifer M. told defendant it was Tommy D., defendant and Tommy D. began arguing and tried to get at each other. Kenny M. asked why they were fighting. Eventually defendant left.

Both Kenny M. and Tommy D. testified the argument was between defendant and Jennifer M. Kenny M. testified defendant came to the window and argued with Jennifer M. Defendant then challenged Kenny M. and Tommy D. to a fight. Kenny M. called defendant a “punk.” Tommy D.'s testimony was similar. Defendant wanted to talk to Jennifer M., but their conversation soon escalated into an argument. Tommy D. pulled Jennifer M. away and tried to calm her down. Defendant said he would kick everyone's ass and challenged them to a fight. Kenny M. said he was not afraid of defendant and called him a punk. Tommy D. told Kenny M. to shut his mouth. Starla S. helped Tommy D. pull Jennifer M. away and then Starla S. went outside and talked with defendant.

That night, defendant's mother knocked on the door of the apartment and, when Starla S. opened the door, defendant rushed in. Starla S. and Jennifer M. testified defendant had a baseball bat. Jennifer M. said he swung it at Kenny M. and then it was knocked away. Defendant lunged at Kenny M.; they wrestled and fought. Starla S. testified defendant slammed Kenny M. into the coffee table, breaking it. She thought defendant dropped the bat when he

punched Kenny M. Kenny M. testified he grabbed defendant's legs and took him down. According to Kenny M. and Tommy D., both defendant and Kenny M. stood up and continued to fight; they ended up outside the apartment.

During this fight, Starla S. claimed Kenny M. put his hands up like he did not want to fight; defendant still wanted to punch Kenny M. Defendant threatened to kill Kenny M.; he threatened everyone.

While Kenny M. and defendant were fighting, a pocket knife fell on the floor. Starla S. testified defendant pulled a pocket knife out of his pocket; it was open. Starla S. picked it up when it fell on the floor. Jennifer M. testified a knife fell out of defendant's pocket and Starla S. picked it up. Kenny M. heard yelling about a knife. The police found a pocket knife on a bookcase.

Tommy D. claimed he heard Kenny M. say, “he's got a knife,” but he understood Kenny M. to say “he's got a nine,” meaning a nine millimeter gun. So Tommy D. ran to the kitchen and grabbed a knife. Kenny M. testified he broke off his fight with defendant and ran into the kitchen. Jennifer M. said defendant chased Tommy D. into the kitchen and then chased Kenny M. and Tommy D. around the apartment with a butcher knife.

The testimony differed on the details of the actual stabbing. Starla S. testified when Kenny M. backed into the kitchen after his fight with defendant, defendant followed and got a knife. Defendant told Kenny M. he would kill him. Defendant lunged at Tommy D. and cut him. Because Tommy D. jumped back, defendant cut him on the collarbone instead of the throat. Defendant stabbed Kenny M. in the back. Kenny M. ran out and defendant followed.

Kenny M. said when he ran to the kitchen, Tommy D. was there with a knife. Defendant came in and grabbed another knife. Kenny M. told both men to drop the knives. Tommy D. did so and defendant grabbed that knife. Defendant sliced or slashed Tommy D. in the forehead and chest. It looked like defendant was going for his throat. Tommy D. pushed defendant away and ran outside. Kenny M. pushed defendant against the wall and defendant stabbed him in the back. Kenny M. ran outside.

Jennifer M. did not see Tommy D. or Kenny M. with a weapon. She said defendant stabbed Kenny M. in the shoulder when he chased Kenny M. around the apartment and defendant put Tommy D. in a headlock and sliced him.

Tommy D. testified when he was in the kitchen with a knife, defendant told him the knife was not going to help him and asked if he was ready to die. Defendant had a knife. Tommy D. hesitated and then put his knife down and put his hands up. Defendant grabbed the knife and nicked Tommy D.'s chest and

> collarbone as Tommy D. leaned back. Defendant also cut his forearm and forehead. Tommy D. had stepped back before defendant went for his throat. Tommy D. thought defendant had cut his windpipe, but then realized the cut was not as bad as he first thought.
>
> Defendant followed Kenny M. and Tommy D. out of the apartment, but, according to Starla S. and Jennifer M., he returned and then got into a truck with his mother and her boyfriend. Jennifer M. said defendant's mother grabbed the bat before she left.
>
> Kenny M. and Tommy D. met up at a BevMo store. Kenny M. had a wound on his back; Tommy D. could see fatty tissue. Tommy D. told Kenny M. he should go to the hospital. Kenny M. said he had problems with the law and was trying not to go back. Kenny M. was on juvenile probation; he was supposed to be at a camp but left without permission. He was concerned about the police due to an arrest warrant. He never went to the hospital, but after the police left he returned to the apartment and had Jennifer M. and Starla S. superglue his wound shut. Tommy D. ran into the police on his way back to the apartment. An ambulance took him to the hospital.
>
> To negate defendant's claim of self-defense, the prosecution offered evidence of two incidents from 1997 and 1995 where defendant, as the aggressor, used a knife against others. In 1997, when defendant was 16, he got into an argument with his mother, brandished a knife and threw it at her. The knife missed her. Two years earlier, when defendant was 14, he stabbed a friend. At trial, the friend called it an accident, but at the time the friend told the police defendant had said he would cut the friend's penis off.

Resp't's Lodg. Doc. 1 at 1-7.

## II. Analysis

### A. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___, U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**B. Petitioner's Claims**

**1. <u>Erroneous Admission of Evidence</u>**

**a. <u>Membership in Aryan Brotherhood</u>**

Petitioner's first claim for relief is that the trial court violated his right to due process when it allowed the introduction of evidence that he was a member of the Aryan Brotherhood and had bragged about beating and stabbing African Americans. ECF No. 1 (hereinafter Pet.) at 5; Resp't's Lodg. Doc. 2 at 16-20, 22-34; ECF No. 13 (hereinafter Traverse) at 3-10. Petitioner

argues that the evidence had no relevance to the charged crimes or the circumstances surrounding those crimes, and was "extremely prejudicial" because of "the picture it painted for the jury." *Id.* He argues that the evidence "amounted to a finger on the scale" in favor of the prosecution and he notes, in this regard, that the prosecutor repeatedly argued this evidence to the jury in her closing and rebuttal arguments. *Id.*

The California Court of Appeal rejected petitioner's claim that his right to due process was violated by the admission of evidence that he was associated with the Aryan Brotherhood. The court reasoned as follows:

> **Admission of Defendant's Association with the Aryan Brotherhood**
>
> Defendant contends it was an abuse of discretion and a violation of due process to admit evidence that he had ties to the Aryan Brotherhood and bragged about beating and stabbing African Americans.
>
> The issue first arose in discussions about redacting the 911 call Jennifer M. made to the police. In the call she described defendant as a "White Supremacist." The court deferred ruling on whether to redact this description until an Evidence Code section 402 (hereafter section 402) hearing was held with Jennifer M. The defense objected to use of the name "Hate" and any reference to tattoos. The prosecutor argued even his mother called defendant "Hate" and the trial court noted defendant had tattoos that were visible when he wore a long sleeved shirt. He had "916" on his throat, as well as the Chinese characters for "Hate" and vampire bites. "On the top" (while the record is unclear, we assume the reference is to the top of defendant's head) defendant had a tattoo of horns and a devil, with the words "blue eyed devil."
>
> At the section 402 hearing Jennifer M. testified she was scared due to what happened in the house. She had received direct threats from people who called and said they had followed her and would kill her. Defendant associated with the Aryan Brotherhood and White Supremacists. He had been involved with the Aryan Brotherhood since he went to prison. He told Jennifer M. he tortured people, targeting blacks. He told her Aryan Brotherhood does hateful things to people not of their color.
>
> The defense objected that Jennifer M.'s testimony was not specific. The court ruled it would exclude evidence that defendant had been in prison and would give a limiting instruction that there was no evidence defendant had done anything he claimed to have done.

The court did not exclude references to the Aryan Brotherhood or White Supremacists.

At the section 402 hearing, the court asked defense counsel what else he wanted to exclude. Counsel responded, “a lot of things,” specifically mentioning the testimony about torturing black people. Counsel also thought much of the testimony was cumulative. The court told him he would have to object when he thought the evidence was cumulative.

At trial, Jennifer M. testified, without objection, that she was afraid of defendant because of what happened at the house and because defendant told her he and his friends committed hate crimes on others. They liked to do things to black people, such as beat them up and stab them. Jennifer M. thought defendant was bragging; he also mentioned he belonged to the Aryan Brotherhood. The court gave a limiting instruction that cautioned the jury that it was to use the evidence only to evaluate Jennifer M.'s testimony and not as proof of defendant's prior violence.

Jennifer M. testified on the night of the incident defendant said he would kill her. Since then she had received calls and people followed her; they threatened to kill her and said they were defendant's cousins or friends. The court further admonished the jury there was no evidence that defendant was responsible for any threats to Jennifer M. The jury was not to assume defendant was behind them.

The People argue defendant has forfeited this contention because he failed to articulate an objection under Evidence Code section 352 and specifically objected only to testimony about torturing blacks, not to defendant's association with the Aryan Brotherhood. Instead, according to the People, he objected only on the basis that there was no proof that anything such as torturing blacks had ever happened and the evidence was “[j]ust too prejudicial.” The entire discussion following the section 402 hearing, however, shows the trial court considered whether to exclude evidence of the Aryan Brotherhood in response to the defense concerns. The court ruled such evidence was admissible to show its effect on Jennifer M. and her fear in testifying. There is no reason to conclude a more specific objection would have brought a different analysis by the trial court or a different ruling. The contention was not forfeited.

On appeal, we review the trial court's rulings concerning the admissibility of the evidence for abuse of discretion. (*People v. Thornton* (2007) 41 Cal.4th 391, 444–445.) To establish a federal due process violation, the defendant must show there were no permissible inferences the jury could have drawn from the evidence. (*People v. Steele* (2002) 27 Cal.4th 1230, 1246; *People v. Albarran* (2007) 149 Cal.App.4th 214, 229–230.) The erroneous admission of evidence offends due process only where it

makes the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

Given the highly inflammatory impact of evidence of membership in a gang, especially one as notorious as the Aryan Brotherhood, great caution should be used in admitting such evidence where there are no gang enhancements charged and the evidence is only tangentially relevant to the charged offenses. (*People v. Albarran*, *supra*, 149 Cal.App.4th at p. 223.) Such evidence may be relevant to a witness's credibility by showing a fear of testifying (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368) or fear of retaliation. (*People v. Malone* (1988) 47 Cal.3d 1, 30.) Evidence of a witness's fear and possible threats and intimidation by gang members is relevant to explain possible witness bias during testimony. (*See People v. Harris* (1985) 175 Cal.App.3d 944, 957.)

Here Jennifer M.'s fear of testifying and her fear of retaliation were amply shown by her testimony about defendant's threats that night and the threatening calls she had received. But, even assuming it was error to admit the evidence of defendant's association with the Aryan Brotherhood, we find the error harmless.

The erroneous admission of evidence requires reversal only where there is a miscarriage of justice. (Evid.Code, § 353; see also Cal. Const., art. VI, § 13 [no reversal unless "the error complained of has resulted in a miscarriage of justice"].) In *People v. Watson* (1956) 46 Cal.2d 818, the Supreme Court established the test for determining whether an error in the trial court resulted in a miscarriage of justice. The court concluded that a miscarriage of justice occurred when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836.)

We find any error in admitting evidence of defendant's claimed association with the Aryan Brotherhood harmless because the evidence of defendant's guilt was overwhelming. Although the four main witnesses told differing stories, all testified defendant forced his way into the apartment, immediately began an unprovoked attack on Kenny M., went to the kitchen and stabbed Tommy D. and Kenny M., who were both then unarmed. Defendant's sole defense was self-defense, but the evidence provided no version of events that supported self-defense. While it is unclear exactly what happened that night, it is clear defendant forced his way into the apartment and attacked Kenny M., thus he was the initial aggressor. Defendant contends that he was justified in using deadly force once he was in the kitchen outnumbered by Kenny M. and Tommy D., with Tommy D. wielding a large knife. The evidence, however, indicated that Tommy D. dropped the knife, either on his own or at the urging of Kenny M., so defendant did not face an immediate peril justifying self-defense. (§ 197,

> subd. (3) [self-defense requires imminent danger of felony or great bodily injury].)
>
> Defendant argues he had no way of knowing if Kenny M. also had a knife and at least one juror might have found defendant swung the knife at Tommy D. (and later at Kenny M.) in self-defense to get out of a frightening situation. Such a scenario of self-defense is not supported by either the evidence or the law. The evidence was that defendant followed Tommy D. to the kitchen, rather than fleeing or otherwise withdrawing once Kenny M. stopped fighting him. Rather than retreating when Tommy D. dropped his knife, defendant attacked both men and chased them when they fled until his mother called him to escape. Further, defendant's fear of future harm from Kenny M. or Tommy D. would not support self-defense, which requires fear of imminent harm. "'Fear of future harm – no matter how great the fear and no matter how great the likelihood of the harm – will not suffice. The defendant's fear must be of imminent danger to life or great bodily injury.' [Citation.]" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.)
>
> Defendant contends the erroneous admission of this evidence violated due process and was fundamentally unfair, so the proper standard of harmless error is the *Chapman* standard of harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.) We disagree. Since the jury could draw the permissible inference that this evidence showed Jennifer M.'s fear and thus use it to evaluate her credibility, as instructed by the court, there was no due process violation. (*Jammal v. Van de Kamp* (9th Cir.1991) 926 F.2d 918, 920.) Further, given the weight of the evidence against defendant, we find its admission, if it was error, was harmless beyond a reasonable doubt.

Opinion at 8-13.

In federal court, a writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." *Jammal*, 926 F.2d at 920. Evidence must "be of such quality as necessarily prevents a fair trial." *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th Cir. 1986)).

/////

Even so, as the Ninth Circuit has observed:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Therefore, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Id.*; *See also Greel v. Martel*, No. 10-16847, 472 Fed. Appx. 503, 504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established federal law that admitting prejudicial evidence violates due process.").

In light of these authorities, the state court's rejection of petitioner's claim that the trial court violated his right to due process in allowing the admission of overly prejudicial information about his involvement with the Aryan Brotherhood and threats of violence against African Americans does not support habeas relief under AEDPA. There is no "clearly established federal law" that the admission into evidence of a criminal defendant's membership in a white supremacist organization violates the due process clause. The court also notes that the challenged evidence was relevant to evaluate the credibility of Jennifer M.'s testimony, and that the jury was given several limiting instructions on how to properly evaluate this testimony. *See* Resp't's Lodg. Doc. 5 (Reporter's Transcript on Appeal) at 261-62, 479. The jury is presumed to have followed these instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Both of these factors lessened the prejudicial effect of Jennifer M.'s testimony.

Under the circumstances presented here, petitioner has failed to demonstrate that the decision of the California Court of Appeal denying his due process claim was contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to relief on this claim.

**b. <u>Co-defendant's guilty plea</u>**

Petitioner's next claim for relief is that the trial court violated his right to due process in admitting evidence that his mother (who was also his co-defendant) pled no contest to burglary in connection with this case. Pet. at 7; Resp't's Lodg. Doc. 2 at 34-42; Traverse at 11-13. Petitioner argues that in the absence of a limiting instruction, the jury may have improperly used this evidence as substantive evidence of his guilt of the charged crimes. *Id.*

The California Court of Appeal found that the trial court erred in admitting evidence that petitioner's mother pled guilty to burglary, but that the error was harmless under the circumstances of this case. The court reasoned as follows:

> **Admission of Evidence Regarding Defendant's Mother**
>
> Angela Bennett, defendant's mother, was charged with all four counts in this case. Prior to defendant's trial, Angela entered a plea of no contest to count one, burglary of a residence. The People sought to introduce Angela's conviction to corroborate the testimony of Starla S. and Jennifer M. about Angela's participation and to provide circumstantial evidence of defendant's guilt. After defendant's objection under Evidence Code section 352 was overruled, the parties stipulated to her no contest plea at trial. Defendant did not request, and the trial court did not give, any limiting instruction on the use of this evidence.
>
> Defendant contends it was an abuse of discretion and violated due process to admit this evidence. He asserts it was inadmissible to prove his guilt and it had little probative value to corroborate the testimony of Starla S. and Jennifer M. That limited probative value was substantially outweighed by the prejudicial effect that the jury would use Angela's plea to conclude he was guilty as well since her guilt was wholly derivative of his.
>
> Angela's plea could not be admitted to prove defendant's guilt. The guilty plea of a codefendant cannot be used as substantive evidence to prove the guilt of a defendant. (*Hudson v. North Carolina* (1960) 363 U.S. 697, 702–703 [4 L.Ed.2d 1500, 1504].)
>
> "While the evidence may not be used to establish a defendant's guilt, it may properly be considered by the jury in evaluating witness credibility. [Citation.]" (*United States v. Halbert* (9th Cir.1981) 640 F.2d 1000, 1004.) Our Supreme Court, however, has held a codefendant's guilty plea is more prejudicial than probative "when offered simply to bolster the credibility of another witness." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1322.) In

> *Cummings*, evidence of Cummings's guilty pleas was admitted in the trial of codefendant Gay. "The trial court ruled that evidence of Cummings's guilty pleas was admissible because it corroborated Pamela's testimony regarding the robberies and the conspiracy. It did so only insofar as she had testified that Cummings participated in those offenses, however. It does not corroborate her testimony that Gay was a participant unless one infers that Gay was Cummings's crime partner in all of the robberies committed by Cummings. Any probative value attached to that inference is clearly outweighed by the prejudicial impact of the evidence. [Citation.]" ( Ibid.)
>
> We have the same situation here. Angela's no contest plea corroborates the testimony of Jennifer M. and Starla S. that Angela was present and participated in the crimes that night, but such testimony was collateral to the issue at trial which was defendant's participation and actions. Angela's no contest plea does not corroborate their testimony as to what defendant did unless the jury used the plea to show defendant's guilt, an improper purpose.
>
> Under California law it was error to admit evidence of Angela's no contest plea. However, since the evidence could properly be used to assess the credibility of Jennifer M. and Starla S. under federal law, its improper admission did not deprive defendant of his right to due process of law. (*See People v. Steele*, *supra*, 27 Cal.4th at p. 1246; *see also People v. Albarran, supra*, 149 Cal.App.4th at pp. 229–230.)
>
> For the reasons set forth *ante*, we find the error in admitting evidence of Angela's no contest plea harmless because the evidence of defendant's guilt was overwhelming.

Opinion at 14-16.

As in the claim discussed immediately above, the state court's rejection of this due process claim does not support habeas relief under AEDPA because there is no "clearly established federal law" that the admission into evidence of a co-defendant's guilty plea in connection with the crimes for which the defendant is on trial violates the due process clause where the evidence is also relevant to evaluate the credibility of a witness. Furthermore, as noted by the California Court of Appeal, the evidence regarding Angela's no contest plea supported the permissible inference that Jennifer M. and Starla S. testified truthfully that Angela was present and participated in the crimes. Accordingly, the trial court's exclusion of this evidence did not violate federal law. *Jammal*, 926 F.2d at 920.

The California Court of Appeal also concluded that any error in the admission of this evidence was harmless because of the overwhelming evidence of petitioner's guilt. As noted by the Court of Appeal, the evidence introduced at petitioner's trial demonstrated that he "forced his way into the apartment, immediately began an unprovoked attack on Kenny M., went to the kitchen and stabbed Tommy D. and Kenny M., who were both then unarmed." Opinion at 12. In addition, "the evidence provided no version of events that supported [petitioner's defense of] self defense." *Id.* Under these circumstances, the admission of evidence that petitioner's mother pled guilty to burglary in connection with this case would not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In short, the decision of the California Court of Appeal that any evidentiary error in admitting this evidence was harmless is not contrary to or an unreasonable application of clearly established federal law. Accordingly, petitioner is not entitled to federal habeas relief on this due process claim.

**2. <u>Cumulative Error</u>**

Petitioner claims that the cumulative effect of the trial court's evidentiary errors, discussed above, violated his federal right to due process. Pet. at 8; Resp't's Lodg. Doc. 2 at 43-44; Traverse at 13-14. The California Court of Appeal denied this claim, as follows:

> Defendant contends the cumulative effect of the evidentiary errors requires reversal. His cumulative error claim has no greater merit than his individual assertions of error, which we have rejected as harmless.

Opinion at 16.

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent, the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S.

284, 290 (1973)). *See also Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial, "no cumulative prejudice is possible"). "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Parle*, 505 F.3d at 927 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

This court has addressed both of petitioner's claims of evidentiary error raised in the instant petition and has concluded that no error of constitutional magnitude occurred at his trial in state court. This court also concludes that the alleged errors, even when considered together, did not render petitioner's defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on the jury's verdict." Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

**3. <u>Ineffective Assistance of Trial Counsel</u>**

Petitioner's final claim for relief is that his trial counsel rendered ineffective assistance in failing to object "on the proper state and federal grounds" to the admission of evidence regarding his membership in the Aryan Brotherhood and threats against African-Americans, and when counsel failed to object on federal grounds to the admission into evidence of his mother's no contest plea. Pet. at 10; Resp't's Lodg. Doc. 2 at 45-48; Traverse at 14-17. The California Court of Appeal denied these claims, reasoning as follows:

> Since we have addressed both claims of evidentiary error and have not found forfeiture, there is no ineffective assistance for failing to make a proper objection and preserve the claim for appeal.

Opinion at 16.

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). After a petitioner

identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88. (quoting *Strickland*, 466 U.S. at 687). Surmounting the bar imposed by *Strickland* was "never an easy task," and "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 788.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

Petitioner has failed to demonstrate that he suffered prejudice as a result of any errors by his trial counsel in failing to object to the admission of evidence. As explained by the California Court of Appeal, petitioner's trial counsel did not forfeit any federal habeas claim because of a failure to raise an objection in the trial court. Nor has petitioner shown that an objection to the admission of evidence on due process grounds would have resulted in a different verdict. Accordingly, he is not entitled to federal habeas relief on this claim.

**III. Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections, if any, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: August 1, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE